## HIGGINS v. HIGGINS.

### No. 10013.

Court of Civil Appeals of Texas.
Austin.

Feb. 6, 1952.

Wilson, Forde & Logan, H. D. Howard, by Douglas Forde, San Angelo, for appellant.

John A. Roehl, Upton, Upton, Baker & Griffis, by Wm. A. Griffis, Jr., all of San Angelo, for appellee.

HUGHES, Justice.

The principal purpose of this suit is to establish the status of certain real and personal property as community property of the parties.

If the parties were married to each other during the time such property was acquired then it is not denied that its acquisition was in a manner to constitute it community property.

Appellee, Margaret Straub Higgins, was the alleged wife and plaintiff in the trial court and appellant, Ernest Higgins, was the defendant and alleged husband.

Appellee relied solely upon a common law marriage. Appellant, in his pleadings, denied the marriage.

Trial was to a jury but upon motion of appellee the case was withdrawn from the jury and judgment was rendered for her. This judgment declared that the parties were lawfully married about July, 1945, and have been husband and wife ever since. The Court further found that certain described property had been accumulated during the marriage.

Appellant contends that the Court erred in withdrawing the case from the jury because the issue of marriage was one of fact.

Appellee does not categorically refute this contention but rather makes a counterpoint "upon which she relies for affirmance of the judgment of the trial court."

This counterpoint is that since appellant, in open Court, admitted "the controlling facts essential to the establishment of a common law marriage," the Court did not err in discharging the jury.

Before developing appellee's argument under this point we believe a better understanding of the case will be had by briefly outlining appellee's marital history.

She was first married in 1938 or 1939 and a daughter, Janice, was born to that marriage.

In 1941 she married appellant in her mother's home in Stanton, Texas.

This marriage was dissolved by divorce in 1944. There were no children of this marriage.

About one year later, or in July, 1945, the parties resumed living together. This is the common law marriage found by the trial court.

This relationship continued until about October 5, 1949, when appellee left the home in which she and appellant were living, went to Houston and on October 14, 1949, in the base chapel at Ellington Field she married Sergeant Walker. One child has been born to this union.

Reverting now to appellee's point we find that the testimony of appellant upon which she relies as admissions established the following: Their living together; cohabitation; using the name of Mr. & Mrs. Higgins; filing joint income tax returns on the basis of being husband and wife; claiming a homestead exemption from State taxes on the same assumption; introducing appellee as his wife; that appellee had sued him for divorce in 1946 or 1947 but that this suit was dismissed and there was subsequent "living together"; that after the present suit was filed appellant told appellee that if it were pressed she was "liable" to get in jail for bigamy.

The following testimony of appellant given at a hearing in a Bill of Discovery proceeding prior to the filing of this suit was offered and received in evidence for impeachment purposes only [1] after appellant denied giving such testimony:

"Q. And you are going to deny making any agreement that you would live together as husband and wife? A. I was going to do what?

"Q. You made no agreement that 'We will go back together now and be husband and wife'? A. Well, I might at the first, start, but along at the last I sure didn't."

The rule as to conclusive admissions of a party is: "The authorities hold that where a litigant admits positive and definite facts, which if true would defeat his right to recover, and such statements or admissions are not subsequently modified or explained by him so as to show that he was mistaken, although testifying in good faith, he is conclusively bound by such admissions, and cannot successfully complain if the court directs a verdict against him." Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 145 S.W.2d 569, 570.

Bearing the foregoing rule in mind we will now quote from appellant's testimony not relied on by appellee:

"Q. Why did you think she was being listed on there as your wife as you just testified to? Was that the truth, or were you trying to cheat the government out of some tax? A. I wasn't trying to cheat the government.

"Q. Then it was the truth that she was your wife? A. She was going as my wife.

"Q. And you considered her your wife, didn't you? A. No, sir. * * * She was staying with me as my wife; she wasn't my wife.

"Q. * * * But you didn't have any idea she was your wife, living there four or five years helping you? A. She wasn't my wife. * * *

"Q. Now, the truth of the matter is that although, regardless of how your opinion may have changed at a later date, that at the time she went back to you at first you did intend and agree to be man and wife, regardless of what you finally fell out about and blew up; that was true at that time, wasn't it? A. No, sir. * * *

"Q. But you are telling this court and jury that at no time did you ever have any agreement with this woman, regardless of your testimony here back in October, at the beginning even, that you were going back together and be husband and wife? A. No, sir. * * * No; I told her she didn't have to get no divorce, wasn't married to her. * * *

"Q. Now, if she wasn't your wife, just what was her status? A. Well, she told me she would like to stay there till she got

[1]. This testimony was admissible as substantive evidence. Sec. 489, Texas Law of Evidence (McCormick and Ray).

her kid up big enough to take care of herself, then she would leave. * * *

"Q. Mr. Higgins, did you ever agree to take Mrs. Walker as your wife subsequent to the divorce in 1944? A. No, sir.

"Q. What was Mrs. Walker's idea, what did she want to do at the time she came back? * * * A. Said she didn't want to get married, said that was the way she wanted to live, she could leave any time.

"Q. Did she say why she felt that way towards you? A. Well, she just didn't like me much.

"Q. Did she tell you that—was anything said regarding her desire to go and come as she pleased? A. She wanted to go and come as she pleased."

 Since any marriage, ceremonial or by the common law, is founded upon the mutual consent or agreement of the parties to become husband and wife we are unable to hold, in view of the foregoing testimony of appellant, that there is that character of positive admissions on his part which establishes the marriage as a matter of law.

We do not rest our decision here, however. We call attention to appellee's own vague version of the "marriage" arrangement:

"Q. What if anything was said there on that occasion about your returning to him, or remarriage? A. Well, I asked him since we were going back together if he didn't think we should be remarried, and he said no, I had been his wife and that he loved me and I always would be his wife, and that was about all. * * *

"Q. How was it that you married Sergeant Walker if you had gone back to and become the wife of Mr. Higgins? A. Well, I was the wife of Mr. Higgins until he kept telling me that I wasn't, and everything, and after that, well, I didn't know."

When we consider the entire record and that appellee was a very intelligent witness, a high school graduate with some business college training whereas appellant only went through the fourth grade, we think it was for the jury to pass upon her claim that a marriage agreement was actually made.

This conclusion is augmented if not foreclosed by the fact that appellee has consummated a ceremonial marriage to another at a time when she claims the common law marriage was in existence. This fact, of itself, made the issue of common law marriage an issue of fact. Hodge v. Hicks, Tex., 233 S.W.2d 557.

The judgment is reversed and the cause is remanded.

Reversed and remanded.