[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-10563
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 30, 2008
THOMAS K. KAHN
CLERK

D. C. Docket Nos. 06-00875-CV-ORL-19-DAB
05-00031-CR-ORL-19-KRS

JUAN JIMENEZ,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 30, 2008)**

Before ANDERSON, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Juan Jimenez, a former federal prisoner proceeding pro se, appeals the

district court's denial of his 28 U.S.C. § 2255 motion to vacate his sentence based on ineffective assistance of counsel. After review, we affirm.

## I. BACKGROUND

In 2005, Jimenez was charged with illegally reentering the United States after previously having been deported, in violation of 8 U.S.C. § 1326(a) and (b)(2). Jimenez pled guilty to the illegal reentry charge in federal district court in Florida.[1] In September 2005, Jimenez was sentenced to 33 months' imprisonment and 2 years supervised release. Jimenez did not file a direct appeal.

Instead, in 2006, he filed a § 2255 motion to vacate his sentence. Jimenez's motion to vacate argued, inter alia, that the lawyer on the illegal reentry charge, Stephen Langs, rendered ineffective assistance by failing to properly investigate and discover evidence establishing that Jimenez is actually a United States citizen (and not a citizen of Mexico, as the government contended in the illegal reentry proceedings).

More specifically, Jimenez, who was born in Mexico as the son of an American citizen (his father) and a Mexican citizen (his mother), argued that Langs advised him that after reviewing all relevant material and law, Jimenez had no legal recourse for challenging the illegal reentry charge against him. As such,

---

[1]There was no written plea agreement.

Jimenez pled guilty to the illegal reentry charge upon Langs's advice.

Subsequent to his guilty plea, however, Jimenez himself discovered an affidavit in his Immigration and Naturalization Service ("INS") file from his father that stated, inter alia, that Jimenez's mother and Jimenez's father "had personal problems and eventually she remarried and so did I." (Emphasis added.) Jimenez argued that this affidavit, along with affidavits from other family members, constituted evidence that Jimenez's parents had been married under the common law of Texas at the time of Jimenez's birth, such that Jimenez was actually a United States citizen rather than a Mexican citizen at birth and therefore could not have illegally reentered the United States.[2] According to Jimenez, Langs's failure to investigate and make the argument that Jimenez was a United States citizen by virtue of his parents' Texas common law marriage amounted to ineffective assistance of counsel.

The district court denied Jimenez's § 2255 motion, finding that under Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), Jimenez failed to establish either deficient performance or prejudice. As to

_____

[2]For instance, an affidavit from one of Jimenez's aunts states that Jimenez's mother and father "were going to get married and I was to be a[] flower girl," while another aunt's affidavit states that Jimenez's mother and father lived together "as man and wife in the years 1953 through 1956 in El Paso, Texas . . . . They were planning on getting married eventually but their relationship fell apart and they separated."

performance, the district court determined that Langs had undertaken "an extensive independent investigation into Mr. Jimenez's background to determine whether he had any defense(s) to the charge." The district court concluded that even if Langs had performed deficiently, Jimenez still could not establish prejudice because the relationship between his parents fell short of a Texas common law marriage.

This Court granted a certificate of appealability ("COA") on the following issue:

> Whether [Jimenez's] counsel was ineffective for failing to investigate and advise him of a possible defense to the unlawful re-entry charge against him: that he might have been a United States citizen because his biological parents may have been married under Texas common law.[3]

## II. DISCUSSION[4]

Under Strickland's first prong, a defendant has the heavy burden of demonstrating that his counsel's performance was deficient and fell below an objective standard of reasonableness. See Strickland, 466 U.S. at 687, 104 S. Ct. at

---

[3]Jimenez's brief makes certain arguments that are outside the scope of the COA. Our review in § 2255 cases is limited to the issues specified in the COA, and accordingly we do not address Jimenez's other arguments. See Murray v. United States, 145 F.3d 1249, 1250-51 (11th Cir. 1998).

[4]When reviewing a district court's denial of a § 2255 motion, we review findings of fact for clear error and legal conclusions de novo. See Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004). The ultimate question of whether a criminal defendant received ineffective assistance of counsel is a mixed question of fact and law. Mincey v. Head, 206 F.3d 1106, 1142 (11th Cir. 2000).

2064; see also Gordon v. United States, 518 F.3d 1291, 1297, 1301 (11th Cir.

2008). There is a strong presumption that counsel's performance was adequate,

and to overcome the presumption, a defendant must show that no competent

counsel would have taken the action that his counsel did take. Gordon, 518 F.3d at

1301.

Jimenez has failed to show ineffective assistance. Jimenez contends that

Langs rendered deficient performance by failing to examine the 1952 Immigration

and Nationality Act ("INA"), which (Jimenez further contends) should have led

Langs to investigate whether Jimenez's parents were married under Texas common

law at the time of Jimenez's birth in 1952.[5] However, the record in Jimenez's

illegal reentry case establishes that Langs actually undertook investigation into

Jimenez's background specifically to determine whether Jimenez had any

---

[5]Specifically, the 1952 version of the INA provided, in pertinent part, that citizens of the United States at birth included persons who were:

> born outside the geographical limits of the United States . . . [to] parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States . . . [for a certain period of time].

8 U.S.C. § 1401(a)(7) (1952) (emphasis added). However, a person only qualified as a "parent" under the 1952 version of the INA when, inter alia, their child was "a legitimate child" or was "legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile." 8 U.S.C. § 1101(b)(1)-(2) (1952) (also qualifying a person as a "parent" when the child became their stepchild before the child reached the age of eighteen). Since it is undisputed that Jimenez was born out of technical wedlock, the question that he argues Langs should have raised is whether Jimenez was "legitimated" under Texas law by virtue of his parents' purported Texas common law marriage.

5

citizenship-based defenses to the reentry charge. Indeed, Langs's motion to compel discovery in Jimenez's illegal reentry case stated that "there were several means by which Mr. Jimenez could have obtained American citizenship," but Langs's investigation of those "vehicles to citizenship" had proven fruitless. Despite this, Langs's motion to compel sought Jimenez's mother's INS file in an effort to explore yet another possible way in which Jimenez might have obtained derivative American citizenship—through his mother's naturalization.[6] Additionally, at Jimenez's sentencing, Langs advised the court that Jimenez was "likely to be deported" after serving his sentence on the reentry charge, adding that the impending deportation was "unfortunate" and that he had "yelled at Mr. Jimenez about that," because Jimenez "had a number of opportunities to get his citizenship here while in the United States, and every lead that [Langs] tracked down through [Jimenez's] biological father, his adoptive stepfather . . . through his mother and through his own marriage," showed that Jimenez never obtained citizenship. (Emphasis added.)

Thus, the record in Jimenez's illegal reentry case establishes that Langs specifically explored the possibility of various citizenship-based defenses to the reentry charge. Moreover, although the record is silent as to whether Langs

---

[6]The docket in Jimenez's criminal case reflects that Langs's motion to compel was granted.

actually explored the specific Texas common law marriage defense raised by Jimenez in this § 2255 case, "[a]n ambiguous or silent record is not sufficient to disprove the strong and continuing presumption" of counsel's competence. Chandler v. United States, 218 F.3d 1305, 1314 & n.15 (11th Cir. 2000) (en banc). Accordingly, Jimenez has failed to establish that Langs rendered constitutionally deficient performance.

Alternatively, even assuming arguendo that Langs rendered constitutionally deficient performance, Jimenez has also failed to establish prejudice. To satisfy Strickland's prejudice prong, Jimenez must show a reasonable probability that, but for Langs's alleged errors, Jimenez would not have pleaded guilty and "would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985) (applying Strickland to a challenge to a guilty plea based on ineffective assistance).

Here, Jimenez has failed to establish prejudice because he has failed to establish that his parents were in fact married under Texas common law at the time of his birth. Specifically, although Texas recognized common law marriage in 1952 (and still recognizes it today), to establish a common law marriage in Texas in 1952, a party had to prove three elements: (1) that the couple had an agreement to be married; (2) that after the agreement, the couple lived together professedly as

7

husband and wife; and (3) that the couple was recognized by the community as husband and wife. See Hodge v. Hicks, 233 S.W.2d 557, 557 (Tex. 1950) (following Walton v. Walton, 228 S.W. 921, 922 (Tex. Comm'n App. 1921)); Grigsby v. Reib, 153 S.W. 1124, 1125, 1130 (Tex. 1913); see also Ex parte Threet, 333 S.W.2d 361, 364 (Tex. 1960) (citing Grigsby).

In this case, the affidavits are at best ambiguous in terms of establishing that Jimenez's parents were married under Texas common law. While the affidavit from Jimenez's father does state that he and Jimenez's mother eventually both "remarried" after breaking up, the affidavit also states that Jimenez was "born out of wedlock." This suggests that Jimenez's father and mother did not hold themselves out to others as husband and wife at the time of Jimenez's birth. See Threet, 333 S.W.2d at 364-65.

Additionally, the affidavits reflect that after Jimenez's mother and father separated, Jimenez's mother married another man, Arthur Daly, who helped to raise Jimenez. Under Texas law, "the act of one of the parties to an alleged common-law marriage in celebrating a ceremonial marriage with another person without having first obtained a divorce, tends to discredit the first relationship and to show that it was not valid." Claveria's Estate v. Claveria, 615 S.W.2d 164, 166 (Tex. 1981) (emphasis added) (citing Higgins v. Higgins, 246 S.W.2d 271 (Tex.

8

Civ. App. 1952); <u>Nye v. State</u>, 179 S.W. 100 (Tex. Crim. App. 1915)); <u>see also</u>

<u>Williams v. Williams</u>, 336 S.W.2d 757, 759 (Tex. Civ. App. 1960) (stating that if a

man and a woman "had in truth and in fact entered into a common law marriage as

alleged . . . said status or relationship of the parties could be dissolved only by

death or by divorce"). Here, it is undisputed that both of Jimenez's parents were

alive when Jimenez's mother married Daly, and Jimenez points to no record

evidence that his father and mother ever "divorce[d]." Jimenez has not shown that

his parents were married under Texas common law at the time of his birth.[7]

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Jimenez's

§ 2255 motion.

**AFFIRMED.**

---

[7]Additionally, we note that at the time of Jimenez's birth, Texas law did "not favor, but merely tolerate[d], common-law marriages." <u>Texas Employers' Ins. Ass'n v. Elder</u>, 274 S.W.2d 144, 147 (Tex. Civ. App. 1955).