

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00130-CV

**ESTATE OF GUADALUPE LOPEZ, SR.**, Deceased

From the County Court, Jim Wells County, Texas
Trial Court No. 18-07840-PR
Honorable Michael Ventura Garcia, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Liza A. Rodriguez, Justice
                Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: March 6, 2024

AFFIRMED

Appellant Guadalupe Lopez, Jr. (hereinafter "Lopez Junior") appeals from a final judgment, rendered in accordance with a jury verdict, that determined appellee Elvira Gonzalez was the surviving spouse of Guadalupe Lopez, Sr. (hereinafter "Lopez Senior"), an individual who died intestate. In three issues, Lopez Junior complains that the trial court: (1) abused its discretion in refusing to include three questions in the jury charge that he contends were required under section 2.401(b) of the Texas Family Code; (2) abused its discretion in overruling his objections to the admission of opinions rendered by the Honorable Alicia York, a retired family-law judge

---

[1] The Honorable Sandee Bryan Marion, Chief Justice (Retired) of the Fourth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.

retained by Gonzalez as an expert in the Texas Family Code; and (3) violated Texas Rule of Civil Procedure 281 by not sending admitted exhibits to the jury room during the fifteen to twenty minutes that it took the jury to deliberate. We affirm.

## I. BACKGROUND

On March 13, 2018, Lopez Senior was involved in a fatal automobile collision. Lopez Junior, one of Lopez Senior's three adult children, filed an application for independent administration and to determine heirship. The county court granted Lopez Junior's application, and it signed a judgment declaring him and his two siblings to be heirs to Lopez Senior's estate. On June 19, 2019, Gonzalez filed a petition for bill of review. Gonzalez pleaded that she had been informally married to Lopez Senior, requested a judgment declaring her to be an heir to Lopez Senior's estate, and sought a share of settlement proceeds paid to Lopez Senior's estate. Lopez Junior generally denied Gonzalez's allegations. The county court withheld a ruling on Gonzalez's petition for bill of review pending a jury trial on the question of whether Lopez Senior and Gonzalez had been in an informal (or "common law") marriage.

At trial, Gonzalez posited that she and Lopez Senior began dating in 1994, that their relationship quickly blossomed into an informal marriage, and that Lopez Senior served as the only father figure to her two adolescent daughters from a previous relationship. Gonzalez relied on, *inter alia*, her testimony, the testimony of Sandra Olivarez, Lopez Senior's cousin, and the opinions of York. She also emphasized two exhibits. First, Gonzalez identified invitations to quinceañeras that she and Lopez Junior hosted for her two daughters on January 31, 1998, and September 29, 2001, respectively. In the invitations, which were admitted into evidence, Gonzalez's daughters each express thanks for "the loving care, affection and guidance from my parents Mr. and Mrs. Lupe Lopez." Second, Gonzalez identified an August 10, 2001 warranty

deed denoting that "Guadalupe Lopez and wife, Elvira G. Lopez" purchased real property in Premont, Texas, together. Gonzalez acknowledged that, in 2007, she took a job in Corpus Christi, Texas, to care for her ailing father. However, Gonzalez maintained that her marriage to Lopez Senior persisted and that the couple visited each other "many times" on a "continuous" basis until his death.

Lopez Junior generally asserted that the couple was never informally married and that the couple's relationship ended in a separation in 2007. Lopez Junior emphasized that he and his two adult siblings did not know that Lopez Senior and Gonzalez had been married. He also highlighted a March 17, 2011 correction special warranty deed that attempted to re-do the real property transaction and denoted Lopez Senior as "Guadalupe Lopez, a single person." Lopez Junior emphasized several financial documents by both Lopez Senior and Gonzalez wherein each identified as "single."

At the trial's conclusion, Lopez Junior offered three questions at the jury charge conference, those being:

QUESTION NO. 1

Were Elvira Gonzalez and Guadalupe Lopez, Sr. informally married pursuant to applicable Texas law?

A man and a woman are married if they agreed to be married and after the agreement they lived together in Texas as husband and wife and they represented to others that they were married.

Answer "Yes" or "No."

Answer: _____

If you answered Question No. 1, "yes", then answer the following Question 2. Otherwise, do not answer Question 2.

QUESTION NO. 2

Did Elvira Gonzalez and Guadalupe Lopez, Sr. ever separate and cease living together?

Answer "Yes" or "No."

Answer: _____

If you answered Question No. 2, "yes", then answer the following Question 3. Otherwise, do not answer Question 3.

QUESTION NO. 3

Did Elvira Gonzalez and Guadalupe Lopez. Sr. separate and cease living together on or before February 12, 2017?

Answer "Yes" or "No."

Answer: _____

The trial court refused all three of Lopez Junior's proposed questions and accompanying instructions. Instead, the sole question and accompanying instructions submitted were:

Were Elvira Gonzalez and Guadalupe Lopez (Senior) married before Guadalupe Lopez's death on March 13, 2018?

A man and a woman are married if they agreed to be married and after the agreement they lived together in Texas as husband and wife and they represented to others that they were married.

The agreement to be married may be shown by circumstantial evidence such as the conduct of the parties, representing to others the couple is married, and proof of cohabitation.

Informal marriages, like ceremonial marriages, can only be dissolved by legal proceedings decreeing annulment or divorce, or by the death of one spouse. Once the marriage exists, the spouses' subsequent denials of the marriage, if disbelieved, do not undo the marriage.

Answer "Yes" or "No."

Answer: _____

The six-person jury unanimously answered "Yes."

The trial court signed a final judgment, in accordance with the jury's verdict, that granted Gonzalez's petition for bill of review and determined that Gonzalez was Lopez Senior's surviving spouse. Lopez timely appeals from the trial court's final judgment.

## II. FAMILY CODE SECTION 2.401(B)

At the outset, we note that "the [informal] marriage of a man and woman may be proved by evidence that . . . [1] the man and woman agreed to be married and [2] after the agreement they lived together in this state as husband and wife and [3] [while in Texas] represented to others that they were married." TEX. FAM. CODE ANN. § 2.401(a)(2). An informal marriage comes into existence when all three elements are present. *In re J.J.F.R.*, No. 04-15-00751-CV, 2016 WL 3944823, at *3–6 (Tex. App.—San Antonio Jul. 20, 2016, no pet.) (mem. op.). Section 2.401(b) of the family code provides:

> If a proceeding in which a marriage is to be proved as provided by Subsection (a)(2) is not commenced before the second anniversary of the date on which the parties separated and ceased living together, it is rebuttably presumed that the parties did not enter into an agreement to be married.

TEX. FAM. CODE ANN. § 2.401(b).

In Lopez Junior's first issue, he complains that the trial court abused its discretion in refusing to include the three questions noted above in the jury charge; he contends that these questions were required under section 2.401(b) of the family code.

Lopez Junior's first issue is advanced by two sub-issues. First, he argues that section 2.401(b) of the family code enshrines a "Morgan-type" presumption that obligated Gonzalez to secure factual findings that would have been elicited by the three questions that he offered but that the trial court refused to include in the jury charge. Second, he challenges the legal and factual sufficiency of the evidence. Specifically, Lopez Junior argues that "[t]he statutory presumption was triggered because the evidence conclusively established that Gonzalez and

[Lopez Senior] ceased living together and no legal proceeding was brought to establish any informal marriage within two years." This constitutes Lopez Junior's sole legal sufficiency challenge. Lopez Junior also argues that Gonzalez failed to present factually sufficient evidence to both rebut the presumption in section 2.401(b) and sustain the jury's answer to the only question submitted to it.

Gonzalez responds by arguing that section 2.401(b) of the family code enshrines a "Thayer-type presumption" that obligated her to produce legally sufficient evidence. According to Gonzalez, once she produced legally sufficient evidence to rebut the presumption, "the presumption disappear[ed] from the case." Gonzalez argues that the three questions Lopez Junior contends should have been included in the jury charge "sought legally immaterial answers" because they "could not alter the effect of the verdict." Gonzalez also argues that she presented factually sufficient evidence.

## A. Thayer or Morgan Presumption

### 1. Standard of Review

Lopez Junior's first sub-issue — whether the presumption in section 2.401(b) is a Thayer or Morgan presumption — comes to us through an assertion of charge error. "[A] trial judge is accorded broad discretion [in submitting a charge to the jury] so long as the charge is legally correct." *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). An issue of statutory construction — such as the type of rebuttal presumption in section 2.401(b) — is a legal question that we review *de novo*. *MCI Sales and Serv., Inc. v. Hinton*, 329 S.W.3d 475, 500 n.30 (Tex. 2010).

### 2.       Applicable Law

Gonzalez references our opinion in *Weed v. Frost Bank*, 565 S.W.3d 397, 412–13 (Tex.

App.—San Antonio 2018, pet. denied), for its explanation of Thayer and Morgan presumptions.

As for Thayer presumptions, we extensively quoted a learned treatise in explaining:

> Over the years, numerous approaches to the treatment of presumptions [in civil cases] have been urged. One, traditionally associated with James Bradley Thayer, gives presumptions only minor effect. A Thayer-type presumption shifts only the burden of production to the opponent of the presumption. In other words, once the presumption's proponent establishes the existence of the basic fact, the factfinder must find the presumed fact exists unless the opponent meets the burden of production as to the presumed fact. This means that the opponent must produce enough evidence so that a reasonable juror could find the non-existence of the presumed fact. If the opponent meets this burden, the presumption disappears from the case; the case proceeds as if there were no presumption. If, however, the opponent fails to meet its burden of production, the factfinder must find that the presumed fact exists. Under a Thayer-type presumption, the burden imposed on the party seeking to rebut the presumption "is slight." All a party must do to eliminate the presumption from the case is produce enough evidence so that a reasonable juror could find the non-existence of the presumed fact. As a result of the ease with which Thayer-type presumptions can be defeated, they are frequently referred to as "bursting bubble" presumptions. Many presumptions in Texas are given the minimal, Thayer-type effect.

*Id*. at 412 (quoting Steven Goode & Olin Guy Wellborn III, TEXAS PRACTICE: TEXAS RULES OF

EVIDENCE § 301.2 (4th ed. 2016)). We described Morgan presumptions as:

> "Shift[ing] to the opponent not only the burden of producing evidence but the burden of persuasion as well." Jerome A. Hoffman, *Thinking About Presumptions: The "Presumption" of Agency From Ownership as Study Specimen*, 48 ALA. L. REV. 885, 896-97 (1997). "Thus, once the proponent establishes the basic facts of a presumption, the factfinder would be required to find the presumed fact unless the opponent actually satisfies the factfinder of the presumed fact's non-existence." 1 STEVEN GOODE & OLIN GUY WELLBORN III, TEXAS PRACTICE: TEXAS RULES OF EVIDENCE § 301.2 (4th ed. 2016). "Merely offering evidence of its non-existence would not suffice to remove the presumption from the case." *Id*.

*Weed v. Frost Bank*, 565 S.W.3d at 413.

Gonzalez references our opinions in *Leyendecker v. Uribe*, No. 04-17-00163-CV, 2018

WL 442724, at *2–4 (Tex. App.—San Antonio Jan. 17, 2018, pet. denied) (mem. op.), and *In re*

*J.J.F.R.*, 2016 WL 3944823, at *3–6, for the proposition that we have "interpreted [s]ection 2.401(b) in a manner . . . adverse to Lopez [Junior's] arguments." In *Leyendecker*, 2018 WL 442724, at *1, the trial court granted summary judgment in favor of one of the parties to an alleged informal marriage on, *inter alia*, the ground that "because the parties ceased living together more than two years prior to the filing of the petition, there is a rebuttable presumption the parties never agreed to be married." On appeal, we held that the non-movant had "raised a genuine issue of material fact on whether the parties agreed to be married," and therefore, "rebutted the statutory presumption under Texas Family Code Section 2.401(b)." *Id*. at *4. In *J.J.F.R.*, 2016 WL 3944823, at *3, the trial court, following a bench trial, found that a couple had entered an informal marriage, and it granted the couple a divorce. The husband challenged the legal and factual sufficiency of the evidence supporting the elements of an informal marriage. *Id*. at *1. We reviewed evidence regarding the couple's agreement to be married and held that the wife "satisfied her burden to produce sufficient evidence of an agreement to be married to rebut the statutory presumption." *Id*. at *6. Although we did not specify, we reviewed the same evidence in assessing the husband's legal and factual sufficiency challenge regarding the element of an agreement to be married and the wife's burden under the section 2.401(b)'s statutory presumption. *Id*. at *3–6.

Neither Lopez Junior's opening brief nor his reply brief mention *Weed*, *Leyendecker*, or *J.J.F.R.*

### 3. Analysis

Lopez Junior argues section 2.401(b) must be a Morgan-type presumption because "[i]f Gonzalez was not required to submit a question on the presumption, then it would do nothing" because "Gonzalez already bore the burden of production and burden of proof." Gonzalez argues that *Leyendecker* and *J.J.F.R.* "confirm [s]ection 2.401(b) is treated like any other Thayer-type

presumption" and that "there is simply nothing untoward about a presumption assigning a burden of proof to a party who already bears it."

Lopez Junior's contention that section 2.401(b) enshrined a Morgan presumption fails for three reasons. First, in *Leyendecker* and *J.J.F.R.*, we concluded that legally sufficient evidence was enough to rebut the statutory presumption in section 2.401(b) of the family code. This treatment suggests that section 2.401(b) creates a Thayer presumption. Second, neither case — nor any that Lopez Junior references — supports Lopez Junior's contention that section 2.401(b) obligated Gonzalez to secure answers to the three questions that Lopez Junior offered. Third, Lopez Junior fails to explain how the answers to the three questions would aid the trial court in crafting a judgment. Accordingly, we cannot say that the trial court abused its discretion in refusing the three questions that Lopez Junior offered.

## B.      Sufficiency of the Evidence

In Lopez Junior's legal sufficiency challenge, he contends that the evidence conclusively establishes that Gonzalez and Lopez Senior ceased living together and no legal proceeding was brought to establish any informal marriage within two years. Lopez Junior's factual sufficiency challenge, liberally construed, presents two distinct but interrelated grounds. Specifically, Lopez Junior argues that "[1] Gonzalez failed to rebut the presumption with factually sufficient evidence, and [2] there is factually insufficient evidence to support a common-law marriage."

### 1.      Standards of Review

We will sustain the legal sufficiency challenge if the record reveals: (1) the complete absence of evidence supporting the finding; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to support the finding; (3) the evidence offered to prove the finding is no more than a mere scintilla; or (4) the evidence conclusively establishes the

opposite of the finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 810–11 (Tex. 2005). More than a scintilla of evidence exists when the evidence presented rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

In reviewing factual sufficiency, we consider all the evidence and uphold the finding unless it is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *Windrum v. Kareh*, 581 S.W.3d 761, 781 (Tex. 2019) (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)).

We apply these standards mindful that this court is not a fact finder. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The trier of fact is the sole judge of witness credibility and the weight afforded their testimony. *See City of Keller*, 168 S.W.3d at 819–20. Similarly, it is the jury's role, not the reviewing court's, "to resolve inconsistencies within or conflicts among the witnesses' testimony." *Lamont v. Vaquillas Energy Lopeno Ltd., LLP*, 421 S.W.3d 198, 209–10 (Tex. App.—San Antonio 2013, pet. denied)

### 2. Analysis

Lopez Junior's legal sufficiency challenge, when properly framed, fails. As briefed, Lopez Junior contends that the evidence conclusively establishes that Gonzalez and Lopez Senior ceased living together and no legal proceeding was brought to establish any informal marriage within two years. Threaded through this argument is a misapprehension that section 2.401(b) embraces a limitations period and some type of "common law" divorce. However, "a common-law divorce is unknown to Texas law[,]" *Claveria's Estate v. Claveria*, 615 S.W.2d 164, 167 (Tex. 1981), and Lopez Junior does not contend that section 2.401(b) reversed the holding in *Claveria's Estate*. Accordingly, the presumption in section 2.401(b) may be rebutted with evidence of the elements

in section 2.401(a). Liberally construing Lopez Junior's legal sufficiency challenge, applying it to the proper statutory framework, and reading it in the context of his other sufficiency arguments, we read Lopez Junior's legal sufficiency challenge as contending that he conclusively negated the first element in section 2.401(a). The evidence we detail below is both legally and factually sufficient to support this element.

Lopez Junior's contention that Gonzalez failed to rebut the presumption with factually sufficient evidence begins with an arguably false premise that section 2.401(b)'s rebuttable presumption may be subject to a factual sufficiency challenge. *Cf. Amaye v. Oravetz*, 57 S.W.3d 581, 584 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (requiring only that spouse "present more than a scintilla of evidence in order to withstand summary judgment on the basis that the couple did not agree to be married."). Nevertheless, we collapse Lopez Junior's factual sufficiency challenge regarding section 2.401(b)'s rebuttable presumption into his broader factual sufficiency challenge.

Lopez Junior's broader factual sufficiency challenge argues that the only evidence supporting the agreement-to-be-married (first) element is a deed signed by Lopez Senior and Gonzalez and the invitations to the quinceañeras of Gonzalez's two daughters. Lopez Junior argues that these pieces of evidence are factually insufficient in four aspects.

First, Lopez Junior contends that the identification of the buyers of the Premont real property in the August 10, 2001 deed, denoted as "Guadalupe Lopez. and wife, Elvira G. Lopez," is "factually insufficient to support the conclusion that they entered a common-law marriage because [Lopez Senior] never intended for Gonzalez to sign the deed." The real property in question was a beauty salon owned by Charlotte Mayo. Lopez Junior highlights Mayo's testimony that, during the real estate negotiations and closing processing, Gonzalez was never introduced as

Lopez Senior's wife and Gonzalez "was [at the closing] to help [Lopez Senior] with his reading and writing, because he was illiterate, to help him understand." Lopez Junior also highlights the March 17, 2011 correction deed that Mayo and Lopez Senior signed that identifies "Guadalupe Lopez, a single person" as the buyer of Mayo's beauty salon. Before the correction deed was signed, Lopez Senior consulted with Cristina Soliz, an attorney. Soliz's notes from the consultation, which were admitted, provide:

> Elvira G. Lopez
>
> Deed had a mistake on it. I need a correction deed taking her name off because she was not my wife ever[;] we were not living together[.] I don't know how to read very well [and] she was supposed to be there to help me. Instead[,] she put her name on the property. Now I can't find her.

Lopez Junior argues that "the fact that Gonzalez's name was briefly on the deed" is so weak when weighed against the countervailing evidence of Mayo's testimony and the correction deed.

Lopez Junior's argument fails to analyze all the evidence relating to the property in question. Gonzalez testified that she and Lopez Senior purchased Mayo's beauty salon and converted the property into "Lopez Taqueria Bar and Grill." She described it as a "family business." *See Omodele v. Adams*, No. 14-01-00999-CV, 2003 WL 133602, at *3 (Tex. App.— Houston [14th Dist.] Jun. 24, 2004, no pet.) (mem. op.) (holding that evidence relating to a couple "sign[ing] legal documents purchasing a home and obtaining title insurance in which they identified themselves as husband and wife and identified the property as community property" was legally and factually sufficient as to the third— representing to others — element of an informal marriage). Additionally, Mayo's recollection of Lopez Senior being "illiterate" and Soliz's notes that he did not "know how to read very well" must be weighed against Lopez Junior's testimony that his father could read and write English. Accordingly, the jury may have reasonably believed that Gonzalez attended the real estate negotiations and closing processing as Lopez Senior's wife

and co-purchaser of Mayo's property rather than as merely Lopez Senior's interpreter. *See Lamont*, 421 S.W.3d at 209–10 (providing that it is the jury's role, not the reviewing court's, "to resolve inconsistencies within or conflicts among the witnesses' testimony.").

Second, Lopez Junior contends that the quinceañera invitations are factually insufficient because "there was no evidence that either [Lopez Senior] or Gonzalez drafted or had anything to do with the contents of the invitations." He highlights the testimony of Cristina Trevino, a guest who attended one of the quinceañeras, and her recollection that she did not believe Lopez Senior and Gonzalez were married.

Again, Lopez Junior's argument fails to analyze all the evidence relating to the quinceañera invitations. Gonzalez testified that "[Lopez Senior] and I, we looked at the [quinceañera] invitations. We picked the invitations. We planned it together." Gonzalez also testified that Lopez Senior escorted each daughter as her stepfather to the church service portion of the quinceañera celebration. Gonzalez identified a picture of Lopez Senior at the church during her eldest daughter's quinceañera, and she noted that Lopez Senior was wearing a wedding ring. Lopez Junior does not reference any evidence contradicting Lopez Senior's participation in drafting the quinceañera invitations or celebrations. *See Eris v. Phares*, 39 S.W.3d 708, 715 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (finding legally sufficient evidence of the third — representing to others — element where husband's friends and employees testified they thought the couple was married because they lived together and acted as if they were married, and husband testified he introduced appellant as his wife and she never contradicted him).

Third, Lopez Junior contends that the testimony of Olivarez, who is Lopez Senior's cousin, and York constitutes circumstantial evidence. Specifically, Lopez Junior argues that "Olivarez testified that [Lopez Senior] said he would not marry Gonzalez until his mother died[,]" and Lopez

Senior predeceased his mother. Gonzalez responds by emphasizing that Olivarez later clarified her statements, testifying:

> Q. What was the reasoning for that conversation that he did — that he said he didn't want to marry her?
>
> A. Because his mother was — did not like Elvira because she always felt that Elvira had taken her son away from — from her. And what we wanted to do was a ceremony where friends and family would be together to celebrate their union. They had already been married all this time, but to celebrate their union with family and friends.
>
> Q. So the conversation was to marry in a ceremony —
>
> A. Yes.
>
> Q. — with inviting friends.
>
> A. Yes.

Earlier, Olivarez testified:

> Q. Do you know whether Elvira and Guadalupe lived in a home that was owned by Elvira?
>
> A. She had a trailer house. And then I know — you know what? They ended up moving the house — I guess it was the house that she had. They ended up moving it, like, behind the street from where I lived and maybe a block down. So now I remember. They did move it.
>
> Q. And so during this time that they moved in, what was your understanding of their relationship? Had it blossomed?
>
> A. He considered her his wife. And she her — his — her husband.
>
> Q. And how do you know that?
>
> A. He would say — well, one, he would always call his mother-in-law "suegra," call his father-in-law "suegro."

Fourth, Lopez Junior references Gonzalez's tax returns, insurance claims, and accident reports wherein Gonzalez notes that she is "single" as evidence that she "held herself out as 'single' to the general public." Lopez Junior also references Gonzalez's use of her maiden name (Platas)

at times and, at other times, that of her previous husband (Gonzalez). As for Lopez Senior, Lopez Junior highlights that he indicated he was "single" on several insurance and tax forms. Lopez Junior also emphasizes that, after Lopez Senior and Gonzalez ceased cohabitating, Lopez Senior began dating Marty Martinez in 2014, and he proposed to marry Martinez in 2017.

Over Lopez Junior's objection,[2] Gonzalez explained why she indicated that she was single on her income tax returns as:

> [Lopez Senior] had too much child support, back child support back then when I met him. He was paying two different child supports [sic], and he told me this was going to affect [sic]. And it was not fair that they would take my income tax that I would get back, and they were going to keep it. So we — he said for me to do it that way. He was protecting me and my daughters.

The jury may have reasonably inferred Lopez Senior's advice to Gonzalez explained why both maintained that they were "single" on certain financial documents.

Relevant to all four of Lopez Junior's factual sufficiency arguments is Gonzalez's authentication of several photographs, which were admitted into evidence, wherein both Gonzalez and Lopez Senior are depicted wearing rings on their wedding fingers. *See Bolash v. Heid*, 733 S.W.2d 698, 699 (Tex. App.—San Antonio 1987, no writ) (op. on reh'g) (holding that one party's testimony was alone sufficient to support a finding of an agreement to be married).

Having examined Lopez Junior's four factual sufficiency contentions and the evidence relating to each contention under the factual sufficiency standard of review, we conclude that the factfinder could have found that Lopez Senior and Gonzalez agreed to be married and that such a finding is not so against the great weight and preponderance of the evidence as to be manifestly

---

[2] On examination by her counsel, Gonzalez was asked why she indicated that she was single on her income tax returns. Gonzalez began by answering that "[t]he reason was that Lupe, my husband, Lopez, Sr., told me to put single on." Lopez Junior then objected on the basis of "the Dead Man's statute of evidence" and prejudice. The trial court overruled Lopez Junior's objections, and he does not raise them before us. Gonzalez then elaborated on her initial answer.

unjust, shock the conscience, or clearly demonstrate bias. *See Windrum*, 581 S.W.3d at 781; TEX. FAM. CODE ANN. § 2.401(a)(2). The evidence also surpasses a mere scintilla of competent evidence and is legally sufficient. *See City of Keller*, 168 S.W.3d at 810–11.

Lopez Junior's first issue is overruled.

### III. TESTIMONY OF RETIRED FAMILY-LAW JUDGE

In Lopez Junior's third issue, he contends that the trial court abused its discretion in overruling his objections to the admission of opinions rendered by York, a retired family-law judge. Lopez Junior argues that York testified regarding issues that the jury was capable of understanding and deciding on their own and that she improperly instructed the jury on the law. He also argues that the error caused the rendition of an improper judgment because York "interpreted provisions of the Texas Family Code and Texas cases[,]" and she "told the jury that the presumption against common-law marriage did not apply to this case."

Gonzalez responds by arguing that the trial court did not abuse its discretion because York testified as to a mixed question of law and fact, such testimony was helpful to the jury, and it was not unfairly prejudicial. Gonzalez also argues that, if there was error, it was harmless because York's testimony was cumulative of other evidence, Gonzalez did not emphasize York's testimony during her summation, and Lopez Junior's evidence was too weak for York's testimony to make a difference. Gonzalez pointedly argues that "it simply misstates the record to argue that York's testimony was the 'thrust' of Gonzalez's case" and "[t]o the contrary, that evidence could be lifted right out of Gonzalez's narrative with virtually no impact on her position."

Lopez Junior references *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004), in support of his contention that York's testimony probably resulted in an improper judgment. In *Nissan Motor*, the Texas Supreme Court instructed us to "review the entire record, and require the

complaining party to demonstrate that the judgment turns on the particular evidence admitted." *Id*. *Nissan Motor* also instructs that "erroneous admission is harmless if it is merely cumulative." *Id.* Additionally, we must review "the efforts made by counsel to emphasize the erroneous evidence, as well as whether contrary evidence existed that the improperly admitted evidence was calculated to overcome." *U-Haul Intern., Inc. v. Waldrip*, 380 S.W.3d 118, 136 (Tex. 2012). In applying these rules, the court in *Nissan Motor* observed that the claimant's "trial attorneys clearly believed her case turned on the evidence of other incidents." *Nissan Motor Co.*, 145 S.W.3d at 144. The court in *Nissan Motor* also observed how the claimant's attorneys emphasized that piece of evidence in their voir dire, opening statement, and summation. *Id*. at 144–46.

## A.      York's Testimony

In support of Gonzalez's position, York testified about several admitted exhibits, including the quinceañera invitations, the 2001 deed, and evidence relating to a post office box that Lopez Senior and Gonzalez shared. York also reviewed deposition testimony of Gonzalez and Olivarez. Much of this deposition testimony is cumulative to Gonzalez's and Olivarez's in-court testimony. Nevertheless, York provided four legal rules, and she opined how an application of the evidence that she reviewed to each of the four legal rules supported Gonzalez's position. Specifically, York: (1) articulated the rule that "a common-law divorce is unknown to Texas law;" (2) testified that, if Lopez Senior did not intend to be married, he was obligated to correct any misimpression; (3) discounted the testimony by Lopez Senior's three children that they did not know of the alleged common law marriage by explaining that not everyone in the community needs to know; and (4) testified that the correction deed was an invalid legal nullity.

**B.** **Harmless Error Analysis**

Lopez Junior references *Greenberg Traurig of N. Y., P.C. v. Moody*, 161 S.W.3d 56, 94 (Tex. App.—Houston [14th Dist.] 2004, no pet.) in support of his contention that York's testimony was harmful because "she took over the role of the judge and the jury in instructing the jury and then proceeded to make conclusions on the ultimate fact." Assuming without deciding that the trial court abused its discretion in overruling Lopez Junior's objections, any such error was harmless for four reasons.

First, much of what York recounted was cumulative of the testimony of Gonzalez and Olivarez and the 2001 deed and quinceañera invitations that were admitted into evidence.

Second, at most, four of York's opinions were arguably not cumulative and calculated to overcome contrary evidence — those being York's opinion that: (1) the correction deed was a void legal nullity; (2) Lopez Senior's obligation to correct any misimpression by friends and family that he and Gonzalez were informally married; (3) the representation of an informal marriage need not be conveyed to everyone Lopez Senior contacted; and (4) the rebuttable presumption in section 2.401(b) had been rebutted. Nevertheless, the harm analysis in *Greenberg*, 161 S.W.3d at 98, emphasized that the statements of law by a law professor and former justice of the Texas Supreme Court in that case were incorrect. Although Lopez Junior argues that "York instructed the jury on the law (incorrectly)[,]" he does not reference a single case that contradicts the legal opinions that York applied to the facts in this case. The Texas Supreme Court has explained that "an expert may state an opinion on a mixed question of law and fact as long as the opinion is confined to the relevant issues and *is based on proper legal concepts*." *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 365 (Tex. 1987) (emphasis added). Applying this rule in the context of a harm analysis and assuming without deciding that York's four opinions constituted impermissible

testimony on pure questions of law, Lopez Junior has not established that York articulated *improper* legal concepts. *Cf. id.* Moreover, the "contrary evidence" that York's four opinions may have been calculated to overcome attempted to rebuff a "common law divorce" theory espoused by Gonzalez and foreign to Texas law.

Third, Lopez Junior does not dispute that Gonzalez did not emphasize York's testimony.

Fourth, as noted above, the evidence Gonzalez marshalled in support of her informal marriage claim withstood Lopez Junior's factual sufficiency challenge by a comfortable margin. *See Jackson v. Takara*, 675 S.W.3d 1, 7 (Tex. 2023) (internal citations and quotation marks omitted) ("In evaluating whether erroneously admitted evidence is harmless, we review the entire record, considering, in particular, the state of the evidence, the strength and weakness of the case, and the verdict.").

Lopez Junior's second issue is overruled.

## IV. RULE 281

In Lopez Junior's third issue, he contends that the trial court violated Texas Rule of Civil Procedure 281 by not sending admitted exhibits to the jury room during the fifteen to twenty minutes[3] that it took the jury to deliberate. His opening brief does not explain how the trial court's omission resulted in harm.

### A.    Standard of Review

Before a new trial can be granted, "the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the petitioner as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, . . . ." *First*

---

[3] After the jury returned its verdict, counsel for Lopez Junior objected, noting that the jury had deliberated for "about 15 minutes or 20 minutes" and that exhibits had not yet been delivered to the jury room when the jury announced that it had reached a verdict.
.

*Emps. Ins. Co. v. Skinner*, 646 S.W.2d 170, 172 (Tex. 1983) (citing *Lorusso v. Members Mut. Ins. Co.*, 603 S.W.2d 818, 819 (Tex. 1980)). The reviewing court is to examine "the entire trial record" when determining whether the error was harmful. *Lorusso*, 603 S.W.2d at 821.

**B.**     **Applicable Law & Analysis**

Texas Rule of Civil Procedure 281 states in part: " . . . the jury may, and on request shall, take with them in their retirement . . . any written evidence." TEX. R. CIV. P. 281. In *First Employees*, 646 S.W.2d at 172, the Texas Supreme Court held that Rule 281 is mandatory "and requires no request from the jurors or counsel." Therefore, the trial court erred "in not sending the exhibits to the jury room." *Id.* at 173.

Lopez Junior contends that he is entitled to a new trial because of the trial court's error. To constitute a new trial, the error must be harmful. *See id*. at 172 (explaining the standard for reversal due to trial court error). Here, Lopez Junior asserts that his case relied on tax returns, insurance policies and worker's compensation forms in which both parties held themselves out to be single. Lopez Junior contends that because these documents were not provided to the jury at the time of deliberation, the judgment should be reversed, and a new trial should be granted. Although the trial court erred in not sending the exhibits to the jury room, this error was harmless.

In *First Employees*, the appellant specifically asserted harm because two exhibits — unemployment benefit application forms and an application for employment — were not submitted to the jury. *Id*. The Court found that this error was not reversible because: (1) the exhibits were not contested by appellee; (2) appellant had the opportunity to cross-examine witnesses on the exhibits; (3) the jury examined the exhibits when they were introduced into evidence; and (4) the exhibits were referenced "extensively" during closing arguments. *Id.* at 173.

Like in *First Employees*, the evidence Lopez Junior highlights was admitted during the trial "without objection or contradiction" by Gonzalez. *Id.* There was no dispute as to "the existence and relevance" of these documents. *Id.* For example, Lopez Senior's tax returns from the years 2013–2017, were admitted without contest from Gonzalez, although Lopez Senior filed as single those years. Witnesses on both sides testified about these documents. For example, Gonzalez identified herself as single on multiple past employment records. Gonzalez explained that she identified herself as single because of Lopez Senior's child support obligations. The exhibits in question were published to the jury during the trial. Finally, the evidence was referenced extensively during closing arguments. For example, Lopez Junior's counsel argued that Lopez Senior "always filed his tax returns as being single, not married." Lopez Junior's counsel also reminded the jury of Gonzalez's forms: "single, single." Furthermore, the jury found in favor of Gonzalez after deliberating for less than twenty minutes, suggesting that jurors did not consider it necessary to review the exhibits to reach a verdict.

When considering the entirety of the record, the trial court's failure to allow the jury to examine the exhibits during its deliberations does not amount to "such a denial of the rights . . . as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case." *Id*. at 173. Therefore, the trial court's error was harmless.

Lopez Junior's third issue is overruled.

## V. CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice