

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00875-CV

Lilian Goria **BOWLES**,
Appellant

v.

Simon David **BOWLES**,
Appellee

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-CI-11389
Honorable Christine Vasquez Hortick, Judge Presiding

Opinion by:     Adrian A. Spears II, Justice

Sitting:        Lori Massey Brissette, Justice
                Adrian A. Spears II, Justice
                Velia J. Meza, Justice

Delivered and Filed: June 3, 2026

AFFIRMED

Lilian Goria Bowles appeals from a final decree of divorce dissolving her marriage to Simon David Bowles. In three issues, Lilian argues the trial court erred by: (1) characterizing certain property—a limited liability company—as Simon's separate property; (2) failing to file additional findings of fact; and (3) overruling her objection to Simon's amended pleadings. In a cross-point, Simon argues the trial court erred by finding a valid marriage existed between the

parties. In a supplemental brief, Simon argues the trial court lacked subject-matter jurisdiction because the parties did not satisfy the Texas Family Code's residency requirements. We affirm.

BACKGROUND

On June 21, 2022, Simon filed a divorce petition in Bexar County, Texas, seeking to dissolve his marriage to Lilian. Lilian answered Simon's petition and counter-petitioned for divorce. On February 14, 2023, the trial court signed an order appointing a receiver to take charge and possession of a business named Flea Away, LLC, which manufactures and sells all-natural flea, tick, and mosquito repellant for dogs and cats.

On May 31, 2024, the trial court held a bench trial. At trial, the evidence showed that Simon and Lilian attempted to marry on July 8, 2012. However, on that date, Simon and his first wife were still married. Simon and his first wife were not divorced until November 27, 2012. The divorce decree from Simon's first marriage awarded Flea Away to Simon as his sole and separate property.

The evidence further showed Flea Away started doing business in 2012 and operated as a sole proprietorship for more than a decade. On June 15, 2022, Flea Away ceased operating as a sole proprietorship and started operating as Flea Away, LLC, a limited liability company. An expert determined the fair market value of a one-hundred percent membership interest in Flea Away, LLC was $2,925,000.00 as of January 31, 2024.

Lilian testified that she had worked at Flea Away throughout her marriage to Simon. Lilian believed she was a part-owner of Flea Away, LLC. Lilian claimed she acquired an ownership interest in the business the day she started working there. Lilian also claimed that documents executed in 2022 showed that she had an ownership interest in the business, but no such documents were admitted into evidence at trial.

Lilian acknowledged that a sole proprietorship named Flea Away existed in 2012, but she insisted it was not the same as the current business, Flea Away, LLC. When asked to describe how the business had changed, Lilian stated that since the formation of Flea Away, LLC the business had added two additional products and received FDA approval. Lilian acknowledged that the only business still in existence was Flea Away, LLC, which was under the control of a receiver.

The receiver, Andrew Kroll, testified that he had served as the receiver of Flea Away, LLC for about a year. By the time of trial, the business offered only one product, the Flea Away tablet. According to Kroll, Flea Away, LLC, was a simple business; it did not have any inventory, fixed assets, or long-term contracts. Kroll added: "It's balance sheet is its bank account, basically."

The trial court granted Simon's first amended petition for divorce and signed a final decree of divorce, which confirmed as Simon's sole and separate property "the business entity known as Flea Away, LLC (formerly known as d/b/a/ Flea Away)" along with various assets belonging to the business entity. The trial court ordered Simon to pay Lilian "as an equalization payment," the sum of $438,750.00, which represented fifteen percent of the value of Flea Away, LLC. Additionally, the trial court ordered Simon to pay Lilian (1) $100,000.00 on her waste/fraud claim and (2) $110,272.00 as reimbursement for a loan Lilian obtained while the divorce was pending. The trial court also awarded Lilian three vehicles and a house located in San Diego, California. As to debts, Simon and Lilian were each ordered to pay fifty percent of the balance due, including principal, interest, taxes, insurance and escrow, on the mortgage note on the San Diego house.

Lilian filed a notice of appeal, requested findings of fact and conclusions of law, and filed a notice of past due findings of fact and conclusions of law in a timely manner. In her initial brief, Lilian complained about the trial court's failure to file findings of fact and conclusions of law. We

abated the appeal to the trial court for findings of fact and conclusions of law, which the trial court then issued. In its findings of fact and conclusions of law, the trial court stated, in relevant part:

> At the time of the divorce, SIMON DAVID BOWLES owned an entity known as Flea Away, LLC, which had an estimated fair market value of $2,925,000.00 and owned the following assets, which are not part of the community estate:
>
> a. The 2019 Ford F-450 Dually motor vehicle . . .
>
> b. The 2021 Alliance Valor 43v13 5th wheel motor vehicle . . .
>
> c. The 2019 Harley Davidson Ultra Limited motorcycle . . .
>
> d. The 20010 Wells Cargo Trailer . . .
>
> e. All assets held by the receiver in this action, including all sums currently on deposit with receiver held in the name of Flea Away, LLC.
>
> . . . .
>
> The Court finds that SIMON DAVID BOWLES established by clear and convincing evidence that Flea Away, LLC is his separate property because, before the marriage, SIMON DAVID BOWLES operated a sole proprietorship called Flea Away which had a similar name and was in a similar line of work and which was awarded to Simon David Bowles as his sole and separate property in his prior divorce granted by the State of California on November 27, 2012.

Thereafter, Lilian filed an amended appellant's brief and a reply brief. Simon filed an appellee's brief. Both parties also filed supplemental briefs.

## SUBJECT-MATTER JURISDICTION

As a preliminary matter, we address the trial court's subject-matter jurisdiction, which the parties did not challenge in the trial court. However, because subject-matter jurisdiction cannot be waived, it can be raised for the first time on appeal. *Texas Dep't of Transp. v. Self*, 690 S.W.3d 12, 20 (Tex. 2024); *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008).

In his appellate briefing, Simon argues the trial court lacked subject-matter jurisdiction to render a final decree of divorce because neither he nor Lilian satisfied the residency requirements

set forth in section 6.301 of the Texas Family Code. In his pleadings, Simon represented that prior to filing his divorce petition, he was a domiciliary of Texas for the preceding six-month period and a resident of this county for the preceding ninety-day period.

Section 6.301 provides that a divorce suit cannot be maintained in Texas unless at the time the suit is filed either the petitioner or the respondent has been a domiciliary of the state for the preceding six-month period and a resident of the county in which the suit is filed for the preceding 90-day period. TEX. FAM. CODE § 6.301. While section 6.301's residency requirements have been characterized as "mandatory" and "akin to jurisdictional," they are not actually jurisdictional. *In re Green*, 385 S.W.3d 665, 669 (Tex. App.—San Antonio 2012, no pet.); *Oak v. Oak*, 814 S.W.2d 834, 837 (Tex. App.—Houston [14th Dist.] 1991, writ denied) ("The residency requirements of [section 6.301's predecessor statute] are not jurisdictional, but, rather, prescribe the qualifications that must be met before a court may grant a divorce."). Because section 6.301's residency requirements are not jurisdictional, any alleged failure to satisfy them did not deprive the trial court of subject-matter jurisdiction.

CHARACTERIZATION OF PROPERTY

In her first issue, Lilian argues the trial court abused its discretion by characterizing Flea Away, LLC as Simon's separate property. We construe her brief as making three categories of complaints about the characterization of this property, which we address below.

### *Rebuttal of Community Property Presumption*

At the outset, Lilian argues that Simon failed to meet his burden to rebut the community property presumption because Simon's testimony was the only evidence supporting his claim that the business was separate property.

"Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." TEX. FAM. CODE § 3.003(a); *Landry v. Landry*, 731 S.W.3d 630, 633 (Tex. 2026). However, property owned by a spouse before marriage is that spouse's separate property. TEX. FAM. CODE § 3.001. "[W]hen the right to property accrues prior to marriage, the property is separate." *Weed v. Frost Bank*, 565 S.W.3d 397, 402 (Tex. App.—San Antonio 2018, pet. denied).

"Parties claiming certain property as their separate property have the burden of rebutting the presumption of community property." *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). "To do so, they must trace and clearly identify the property in question as separate by clear and convincing evidence." *Id*.; *see* TEX. FAM. CODE § 3.003(b). Clear and convincing evidence is the degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the truth of the allegation sought to be established. TEX. FAM. CODE § 101.007.

"Whether property is separate or community is determined by its character at inception." *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001). Upon such a determination, the character of the property is not altered by its sale, exchange or substitution. *In re Marriage of Grisham*, No. 10-09-00429-CV, 2010 WL 4570266, at *2 (Tex. App.—Waco Oct. 20, 2010, pet. denied). Mutations and changes in the form of property do not affect its character as separate property so long as it can be traced and identified. *Weed*, 565 S.W.3d at 402 (citing *Tarver v. Tarver*, 394 S.W.2d 780, 783-86 (Tex. 1965)); *see also Smith v. Bailey*, 1 S.W. 627, 628 (1886) ("[T]he wife's separate property may undergo mutations and changes, yet retain its separate character; but the proof to trace and identify it in its changed condition must be clear and satisfactory."). Ordinarily, a spouse claiming separate property must support the claim with documentary evidence; mere testimony that property is separate is generally insufficient to overcome the community

presumption. *In re Marriage of Santopadre*, No. 05-07-00027-CV, 2008 WL 3844517, at *2 (Tex. App.—Dallas Aug. 19, 2008, no pet.).

Our review of the record shows that Simon's testimony was supported by documentary evidence corroborating the separate nature of the business. In his testimony, Simon stated that Flea Away was a sole proprietorship, which he owned prior to his marriage to Lilian. To corroborate this testimony, Simon presented a certified copy of the divorce decree dissolving the marriage between Simon and his first wife. Issued on November 27, 2012, this divorce decree awarded Simon "as his sole and separate property the business known as 'Flea Away' together with any and all obligations, liabilities, taxes or debts associated therewith." Simon further testified that he and Lilian ran Flea Away as a married couple for more than a decade. However, Flea Away was no longer operating as a sole proprietorship. Since June 15, 2022, the business had been operating as Flea Away, LLC, a limited liability company. Documents related to the formation of the limited liability company were admitted into evidence. These documents indicate that, on or about June 15, 2022, articles of organization for Flea Away, LLC were filed with the Texas Secretary of State; an original temporary member was appointed for Flea Away, LLC; and all rights, title, and interest in Flea Away, LLC were transferred from the temporary member to Simon Bowles. Additionally, bank statements from before and after the formation of the limited liability company were admitted into evidence. The bank statements include Bank of America statements from January 1, 2020, to December 31, 2021, which list the account holder as "Simon D Bowles Sole Prop, DBA Flea Away." Most of these statements reflect deposits from "Chewy Inc.," which was established as one of the business's distributors. The bank statements also include JPMorgan Chase Bank NA statements from June 28, 2022, to March 31, 2023, which list the account holder as "Flea Away LLC." Most of these statements also reflect deposits from "Chewy Inc."

We conclude that Simon's testimony about the separate nature of Flea Away, LLC was supported by sufficient documentary evidence corroborating the separate nature of the property. On this record, the trial court could have formed a firm belief or conviction that the community property presumption was rebutted for Flea Away, LLC. *See Harris v. Harris*, 765 S.W.2d 798, 802-03 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (holding community property presumption was rebutted when partnership interest was awarded to husband in previous divorce and remained the same interest until the time of divorce).

### *Mutations/Changes in Form*

The general rule is that the character of separate property is not altered by the sale, exchange, or substitution of the property. *Grisham*, 2010 WL 4570266, at *2. "Property established to be separate remains separate property regardless of the fact that it may undergo any number of mutations and changes in form." *Id*. In *Grisham*, the evidence showed the husband had owned two businesses prior to his marriage. *Id*. At trial, the husband testified that he had transferred the stock and assets of these companies to a third company without receiving compensation for the transaction. *Id*. Because the husband was able to trace these assets back to his separate property, the character of the two companies was not altered, and they remained the husband's separate property. *Id*. The court of appeals upheld the trial court's finding that the two companies were the husband's separate property. *Id*.

Lilian argues the trial court was precluded from finding that Flea Away underwent a mutation and change in form. The main case Lilian cites in support of this argument is *Allen v. Allen*, 704 S.W.2d 600 (Tex. App.—Fort Worth 1986, no writ). In *Allen*, the evidence showed that prior to marrying her husband, the wife owned and operated a beauty salon as a sole proprietorship. *Id*. at 604. About eight months after the parties were married, the business was incorporated. *Id*.

The corporation required an initial capitalization of $1,000.00, which came from the community estate. *Id*. After the incorporation, the wife retained all of the business's physical assets in her name and rented them back to the corporation. *Id*. The trial court concluded that the business was community property, and the wife appealed this characterization. *Id*. After analyzing all the evidence, the court of appeals held that the wife failed to meet her burden to prove that the corporation was her separate property because she did not clearly trace her contribution of separate property to the corporation. *Id*. The court of appeals relied on the $1,000.00 of community funds used to capitalize the corporation, the wife's failure to contribute any tangible assets to the corporation, and the fact that the corporation rented all its equipment from the wife. *Id*. Even though it was clear that the corporation took over the activities of the sole proprietorship, the court of appeals concluded that the only thing the wife contributed to the corporation was the sole proprietorship's goodwill, and without evidence of the value of the goodwill, it was impossible for the court to trace the portion of the corporation created with the wife's separate property. *Id*. at 605.

The present case is factually distinguishable from *Allen*. Here, the evidence showed that, despite a change in form from a sole proprietorship to a limited liability company, the business itself remained intact, continuing to provide the same product to the same distributors. At trial, Lilian and Simon testified that certain physical assets—two vehicles, a motorcycle, and a trailer—belonged to the business. Upon forming the limited liability company, Simon did not take possession of the business's physical assets, nor did he rent them back to the limited liability company. Instead, these assets remained with the limited liability company. Additionally, unlike *Allen*, Simon did not take funds from the community estate and use them as capital to create the limited liability company.

Lilian further argues this case cannot involve a mutation to property because a sole proprietorship does not have a separate legal existence distinct from the operator of the business, and the assets and liabilities of the sole proprietorship belong to the operator directly. *See Bush v. Bush*, 336 S.W.3d 722, 740 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Although Lilian correctly identifies some of the characteristics of a sole proprietorship, we reject her argument that Flea Away's initial structure as a sole proprietorship prevented it from undergoing a change in form.

Although Lilian testified that Flea Away, LLC was not the same as the sole proprietorship because the business had expanded and its product had obtained FDA approval, the trial court was entitled to disbelieve this testimony. *See Weaver v. Preddy*, No. 04-18-00026-CV, 2018 WL 6331063, at *1 (Tex. App.—San Antonio Dec. 5, 2018, no pet.) (recognizing trial court's role as sole judge of witness credibility in bench trial).

Based on the evidence presented, we conclude the trial court have reasonably determined that the change from a sole proprietorship to a limited liability company was merely a change in form that did not alter the separate character of the business.

### Sufficiency of the Evidence—Separate Property Findings

In reviewing an alleged characterization error, we employ a two-pronged approach. *Mora v. Mora*, No. 04-12-00638-CV, 2014 WL 769441, at *3 (Tex. App.—San Antonio Feb. 26, 2014, no pet.). We initially determine if the trial court's separate property finding was supported by clear and convincing evidence, and if it is not, we then determine if the characterization error caused the trial court to abuse its discretion in the overall division of the community estate. *Id*. Under this approach, the complaining party must first establish error by challenging the legal or factual sufficiency of the evidence to support the separate property characterization, and then demonstrate

harm by showing that because of the mischaracterization, the overall division of the property was an abuse of discretion. *Id*.

To prevail on a sufficiency complaint, Lilian was required to challenge the legal or factual sufficiency of the evidence to support the trial court's separate property findings. *See id*. However, Lilian's amended brief does not expressly challenge the trial court's separate property findings, and it does not state if she is challenging the legal or factual sufficiency of the evidence. In her amended brief, Lilian argues: "Without formal tracing or appropriate supporting documentation, it was unreasonable for the trial court to conclude that Flea Away is [Simon's separate property] and the evidence was insufficient for the trial court, as the factfinder, to conclude that Simon overcame the community property presumption" as to Flea Away, LLC. Lilian adds that the mischaracterization of the business harmed her by adversely affecting the overall division of the community estate. We construe Lilian's complaint as a challenge to the legal sufficiency of the evidence to support the trial court's separate property findings.

"A trial court abuses its discretion when it characterizes property as separate without legally sufficient evidence to do so." *Landry*, 731 S.W.3d at 633. When reviewing the legal sufficiency of the evidence under the clear and convincing standard of proof, we review all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *Id*. A core function of the factfinder under any standard of proof—including clear and convincing evidence—is to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.*

Viewing all the evidence in the light most favorable to the trial court's findings and deferring to the trial court's role in resolving conflicts in testimony, weighing the evidence, and

drawing reasonable inferences from basic facts to ultimate facts, we hold that the trial court could have reasonably formed a firm belief or conviction that Flea Away, LLC was Simon's separate property. *See Fannin v. Fereday*, No. 01-13-00951-CV, 2015 WL 4463694, at *6 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (holding evidence sufficient for trial court to form firm belief or conviction that limited liability company was husband's separate property). Therefore, the trial court's findings are supported by legally sufficient evidence. Because we conclude the trial court did not err in characterizing Flea Away, LLC as Simon's separate property, we need not determine if Lilian was harmed by the characterization. *See Mora*, 2014 WL 769441, at *3.

### ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

After we abated the appeal, the trial court filed findings of fact and conclusions of law. In response, Lilian timely filed a request for additional findings of fact and conclusions of law in the trial court. *See* TEX. R. CIV. P. 298. The trial court did not file any additional findings of fact and conclusions of law.

In her amended brief, Lilian complains about the trial court's failure to make additional findings of fact and conclusions of law assigning "a specific value . . . to particular assets, liabilities, and reimbursement claims." For support, Lilian cites to section 6.711(a) of the Texas Family Code, which requires the trial court, on proper request, to make findings of fact and conclusions of law with as to the "value of all assets, liabilities, claims, and offsets *on which disputed evidence has been presented*." TEX. FAM. CODE § 6.711(a) (emphasis added).[1] Lilian

---

[1]Section 6.711(a) states:

> In a suit for dissolution of a marriage in which the court has rendered a judgment dividing the estate of the parties, on request by a party, the court shall state in writing its findings of fact and conclusions of law, including the characterization and value of all assets, liabilities, claims, and offsets on which disputed evidence has been presented.

TEX. FAM. CODE § 6.711(a).

contends that without the additional valuation findings, she is unable to demonstrate the magnitude of the harm she suffered from the trial court's division of the community estate.

Rule 38.1(i) of the Texas Rules of Appellate Procedure requires an appellant's brief to contain a clear and concise argument for the contentions made along with appropriate citations to the record. TEX. R. APP. P. 38.1(i). An appellant's failure to provide substantive analysis of an issue in her brief waives the complaint. *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.). An appellant's failure to include appropriate citations to the record waives any error. *In re R.L.L.*, No. 04-18-00240-CV, 2018 WL 6069866, at *5 n.5 (Tex. App.—San Antonio Nov. 21, 2018, pet. denied); *see* TEX. R. APP. P. 38.1(i) (providing appellant's brief must contain appropriate citations to the record). "It is not the duty of the appellate court to search the record without guidance from an appellant to determine whether her complaints are valid." *In re R.L.L.*, 2018 WL 6069866, at *5 n.5.

In her appellate briefing, Lilian does not identify the assets, liabilities, and reimbursement claims that form the basis of her complaint. Nor does she provide citations to the parts of the reporter's record where disputed valuation evidence was presented. Accordingly, we must conclude that Lilian's complaint about the trial court's failure to file additional findings of fact and conclusions of law is inadequately briefed and presents nothing for our review. *See id.*; TEX. R. APP. P. 38.1(i).

### AMENDED PLEADINGS

Lilian argues the trial court erred by permitting Simon to proceed to trial on his first amended petition.

A party is generally permitted to amend his pleadings without obtaining leave at any time prior to seven days before trial, unless the amended pleadings operate as a surprise to the opposing

party. TEX. R. CIV. P. 63. A trial court has no discretion to refuse an amendment unless (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Wadhwa v. Wadhwa*, 720 S.W.3d 169, 179–80 (Tex. App.—Houston [14th Dist.] 2025, no pet.); *Meuth v. City of Seguin*, No. 04-18-00205-CV, 2019 WL 3208830, at *4 (Tex. App.—San Antonio July 17, 2019, no pet.). "The burden of showing prejudice or surprise rests on the party resisting the amendment." *State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994). We review trial court's decision to allow or deny a pleading amendment for an abuse of discretion. *See id*.

Here, Simon filed his first amended petition on May 23, 2024, which was more than seven days before trial. Simon filed his second amended petition on May 30, 2024, which was the day before trial. During a pre-trial hearing, Lilian complained that Simon's first and second amended petitions were improper because, among other things, they contained a request for confirmation of separate property. In response, the trial court stated, "I'll make it easy. Anything that was pled yesterday is out. . . . [Simon] is not going to be able to seek that. It's outside the seven-day window. Anything that was . . . amended on 5/23, [Simon] can pursue that." Lilian then pointed out that Simon's original petition, which had been his live pleading for almost two years, omitted a request to confirm separate property. In response, the trial court stated that Simon's first amended petition was permissible because the amendment was made prior to seven days before trial. At this point, Lilian did not present any evidence of surprise or prejudice; instead, she simply stated, "Yes, Judge."

The record shows that after the trial court struck Simon's second amended petition and allowed him to proceed on his first amended petition, Lilian did not present any evidence of

surprise or prejudice. Furthermore, Simon's amendment seeking confirmation of separate property was not prejudicial on its face because it did not add a new cause of action. The characterization of property as community or separate is related to the overall division of property in a divorce proceeding. *See* TEX. FAM. CODE §§ 3.003; 7.001; *O'Connor v. O'Connor*, No. 03-23-00407-CV, 2025 WL 2147786, at *6 (Tex. App.—Austin July 30, 2025, no pet.) ("We review a trial court's property division—including its characterization of property as separate or community—for an abuse of discretion."); *Allen*, 704 S.W.2d at 603 ("The starting point in the division of the marital estate is the characterization of the parties' property as community or separate."); *see also Wadhwa*, 720 S.W.3d at 181 ("We cannot conclude that Natalie's narrowing of her request for the right to designate the children's primary residence in her sixth amended petition if joint managing conservators were appointed, as compared to her joint-managing conservatorship request in her fifth amended petition, is a new claim or cause of action."). For these reasons, the trial court did not abuse its discretion by permitting Simon to proceed to trial on his first amended petition.

## APPELLEE'S CROSS-POINT

In a cross-point, Simon argues the trial court erred by determining that he and Lilian had a valid marriage. The trial court granted Lilian's motion for summary judgment and determined that a valid marriage existed between Simon and Lilian as of November 28, 2012, which was the day after Simon was divorced from his former wife. The final decree of divorce recites that a valid marriage existed between Simon and Lilian as of November 28, 2012. Simon now asks us to vacate the decree of divorce in its entirety because he claims a valid marriage never existed.

"A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal." TEX. R. APP. P. 25.1(c). "The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause." *Id*. Simon

did not file a notice of appeal, and we find no just cause. Accordingly, Simon's cross-point presents nothing for our review. *See id*.; *Upsilon L.P. v. New Car Concepts*, No. 04-12-00479-CV, 2013 WL 4686154, at *6 (Tex. App.—San Antonio Aug. 30, 2013, pet. denied) (concluding appellees' cross-points were not before the appellate court when they did not file a separate notice of appeal).

### CONCLUSION

The trial court's final decree of divorce is affirmed.

Adrian A. Spears II, Justice